Good afternoon, Your Honor. May it please the court, Tony Sain with me, Abigail McLaughlin on behalf of defendants and appellants below the County of Riverside et al. With the court's permission, I'd like to reserve three minutes of our 20 minutes of time for rebuttal. May it please the court, this court should reverse the district court and grant judgment based on the Brady violation claim for two reasons, the first of which I will address, the second of which my co-counsel will address. Even without a conviction, no court has held that there can be an actionable Brady violation claim where there has been no court proceeding where the nondisclosure would have affected the outcome. Is that what you're relying on, though? Are you relying on the court proceeding or are you relying on the conviction? Because it does seem like the Ninth Circuit has perhaps extended Brady, which I think is what led the district court to rule the way it did, was we have extended Brady beyond just conviction. Your Honor, even if that were the standard, though, judgment for the defendants was mandated by that case law. In this case, on the record, as is evidenced at 81 through 82, 89 and 407 through 409, it's undisputed that there was no preliminary hearing. There was no court proceeding. How did that happen in this case? In this case, Your Honor, it was through a series of waivers and continuances that were brought by the criminal defendant, as is indicated at the record pages I just cited. There was no court proceeding where this nondisclosed evidence could have affected the outcome. So even if we apply the Ninth Circuit standard, there would still not be an actionable Brady violation. Well, let's assume I agree with you. Let's assume for a moment. Here's what troubles me about the case. And it may be the framing of the claim. I do think it's difficult to make a Brady claim where there's no court proceeding that was affected by the nondisclosure of the evidence. But both in Tatum and in Lee, we said there's a due process claim when, under the facts of the case known to the state, they should have known at some point in time that they didn't have a case anymore, but nonetheless kept somebody in detention. Now, I will grant you that's not the theory that was argued here. But haven't they pleaded sufficient facts to make out a Lee or a Tatum claim? The claim that you're addressing, Your Honor, would really go to their due process malicious prosecution claim, which was time-barred. Well, no, it's not a malicious prosecution claim. The Supreme Court has said malicious prosecution claims are Fourth Amendment claims. But we have said, even when we have said in both Lee and in Tatum, that there's a separate claim, there's a due process claim. And the Supreme Court hinted the same thing in a case in which we said we don't have to decide it, but we assume that there is. That there's a due process claim, that when the state has information that ought to tell them they've got the wrong guy, but nonetheless continue to hold on to the wrong guy, there's a due process claim. Now, to be fair to you and to be fair to the district judge, that wasn't the argument they made in response to the motion for judgment on the pleadings. But because it's a motion for judgment on the pleadings and we're supposed to look at whether or not the complaint might be amendable to make that kind of claim, I'm asking you to tell me why this isn't a case where that kind of claim wouldn't get past a Rule 12 motion. Your Honor, my colleague, Ms. McLaughlin, will address the scope of the claims issue. I'll be addressing whether or not Brady was implicated. However, I would just say briefly that no, I don't know. I'm willing to wait for her. I mean, if you just want to say no, my routine answer is no, and she'll tell you why. Yes. I'll wait for her. But in any event, regardless of whether or not there was an actionable claim under another issue, the only claim that was allowed to survive judgment here was the Brady violation claim, and an actionable Brady violation claim was not brought on the facts of this case because there was a dismissal of all the criminal charges against Mr. Parker long before there was ever a court proceeding where this non-disclosed information could have affected the outcome. But this is what troubles me, and I think you're probably technically correct about the Brady claim. It would mean, let's assume you had DNA evidence that exonerated the defendant in a rape, sexual assault case, and you just held on to it for three years and kept the defendant in jail until the day before trial and dismissed the charges. That would mean there was no Brady claim under your theory of the world, and you might be right. But surely there's some claim under those set of facts, is there not? And again, Your Honor, I would argue, and I think Ms. McLaughlin will explain in more detail, that that would be actually a due process malicious prosecution claim, not a Brady claim. Well, the Supreme Court says a malicious prosecution claim is a Fourth Amendment claim. Our court says in Lee and Tatum, and I'm giving your friend some advance notice of the questions I'm going to ask her, our court says in Lee and Tatum that it's not a Fourth Amendment claim when we're talking about the claim I just described. It's a due process claim, and indeed, that's the way the Supreme Court described the potential claim, too. So I understand your Brady point, and I don't think you need to say much more to me on your Brady point, but I am disturbed at the notion that, well, there's no Brady claim, and therefore we waltz away no matter what we do. I imagine that Ms. McLaughlin will explain that the only claim that survived judgment for the purposes of this appeal was the Brady violation claim. So what should we do? Let's assume that I am convinced that they've stated a Lee or Tatum claim, or at least that they can state a Lee or Tatum claim. We're up here on an interlocutory appeal where the district judge was only asked – where the only issue addressed was whether there was a Brady claim. Let's assume the judge finds – we find that he was wrong. Should we send it back with leave for them to amend to assert a different claim? No, Your Honor, because that – I'm sure you were going to say that. Tell me why. Because it was a race of appeal, Your Honor, as Ms. McLaughlin will explain in more detail. That was not an issue that was raised. But here – they don't have to cross appeal in an interlocutory appeal case. This is not a final judgment. We're addressing only – if that's what she wants to explain, let me tell her in advance. They're not required to cross appeal anything on an interlocutory appeal case. It's just an interlocutory appeal of the judge's ruling. And if the judge's ruling is right, we say so. If it's wrong, we say so. I've got a separate problem here, which is that I don't think this complaint should be dismissed in this case. And the judge didn't dismiss the complaint. If he had dismissed it, we would say, well, you should have given them leave to amend. He didn't dismiss the complaint. He upheld the complaint, perhaps under wrong reason. But I don't think that means they're out of luck. Well, I would disagree, Your Honor, but I'll allow Ms. McLaughlin to explain the answers in response to the court's questions. Maybe we ought to get her up here. Do you want to reserve for rebuttal? You're reserving for rebuttal, right? Yes, Your Honor. Okay. I mean, you're about – But there are a couple of issues I would like to make for the court's opinion. I think, actually, and I disagree with Your Honor, that I don't believe that the case actually turns on any issue except for the Brady. And here's why. Because the issue really goes to – and the claim that they were bringing was that the failure to timely disclose this allegedly exculpatory evidence caused them the prejudice. And when we define the prejudice, the Supreme Court has been very clear about how we define that prejudice when you're talking about exculpatory evidence. And the standard it has applied universally has been the Brady standard, meaning that it has to affect the outcome of a court proceeding. The Supreme Court has said trial, absent trial conviction, or whether it's a trial and conviction or just a pled conviction, absent trial, there's no prejudice. And I don't believe that what the criminal defendants here, the plaintiffs below, are alleging in terms of the Matthews test actually applies here. I think the standard is controlled solely under Brady. Even if we apply, however, Tatum here, Tatum, which is not directly on point, was about a preliminary hearing. And it actually goes to my larger point, that absent trial – So you don't think there can be a due process violation in the absence of any court proceeding? No, Your Honor, and here's why. If we think about this, what they're essentially doing is – The answer is no. You don't think there can be a due process violation? And here's why. What they're essentially talking about is a Brady dismissal duty. The vindication of a dispute between the prosecutor and the criminal defendant as to whether or not there's a viable claim is a court proceeding. They're going to argue to that judge, hey, we don't think this claim is viable. The prosecutor is going to argue why that defendant should be held to answer. The court proceeding will vindicate that. Okay, so let me go back to my hypothetical, which I thought you'd successfully deflected to your colleague, but now you're going to have to answer it. Let's assume that they get DNA evidence that shows that this person was not the assailant in a sexual assault. And they just sit on it, the prosecutor. Prosecutors just sit on it. The trial occurs, is scheduled four years later. And the day before trial, they dismiss the charges. And you're saying there has been no proceeding and, therefore, there can be no due process claim? In that circumstance, if there has been no court proceeding where there's a dispute – That's hypothetical. Okay? There has been no proceeding at which that was affected by the absence of this evidence. He may have been charged correctly at the beginning. The evidence wasn't available at the time of the probable cause hearing. And so everybody gets ready for trial, and the prosecutors sit there and say, ha, ha, ha, we'll just wait four years and let them know. They let them know the day before. Yes or no? Due process claim or no due process claim? Not in my opinion, Your Honor, but I see that my time has expired. No, no, no. You've got to answer. Oh, well, I'd say no, Your Honor. No due process claim. No, Your Honor, because the court proceeding is how that right is vindicated, and there wasn't one here. And that is undisputed on this record. So I see my time has expired, so thank you. Well, it's not expired. You've got 32 seconds. Oh, well, okay. There we go. So we'll give you every last second. Well, on the Brady issue, Your Honor. No, for rebuttal. Oh. Well, I have three minutes for rebuttal on that one. No, no, no, no, no. You've been using your rebuttal. Okay. Well, I definitely want to save some of that, Your Honor. I tried to warn you. Yeah. He's helping you. Yeah, I appreciate that. So if I could hand it off to Ms. McLaughlin to address some of your non-Brady concerns. Thank you very much. That was a literal handoff. That was good. Good afternoon, Your Honors. As my colleague said, my name is Abigail McLaughlin, and I also represent defendant appellants in this matter. To address the court's excellent questioning of my colleague about how the court's rulings in Lee and Tatum affect this case, the issue here is that although under Lee and Tatum the due process claim scope may have been widened, it doesn't solve the plaintiff appellee's underlying issue that those other substantive due process claims, including his malicious prosecution claim, would still be time-barred in this instance. That doesn't address the due process issue. See, the time-bar was for a Fourth Amendment claim, was it not? Well, the court — And, by the way, that's not in front of us. I'm not sure that the judge was. We'll get that later, right? No matter what we do in this case, if there's a final judgment in your favor, they'll come up here and they'll argue whether the time-bar in the Fourth Amendment was correct or incorrect. They're not required to make that argument now. Correct. Your Honor, I agree with that. However, going to the facts of this case and going back to the court, even if this court said, yes, give him a chance to admit the claim, the claim coming back before this court would still be fatal in terms of — Well, was their Brady claim time-barred? The Brady claim was not time-barred. So I don't understand. Because of the discovery rule? The Brady claim was not time-barred because of the delayed discovery rule. Okay. So wouldn't the same discovery rule apply to a due process claim whose premise was that at some point in time you learned I was innocent, but you nonetheless kept me in jail for an extensive period of time before you dismissed the charges? Assume that states a claim for a moment. Isn't the discovery about that exactly the same as the discovery of the Brady claim? No, Your Honor, because based on the plaintiff's own allegations, he alleged that he knew from the outset when the criminal charges that were brought against him — He knew that from the outset. Defendants can believe they're innocent from the beginning and there's no due process claim in trying them. What he's saying in this case is you had lots of evidence that I didn't do it, but when it tipped over the line and when you should have known I didn't do it was when you heard somebody else confess to the crime. That may be a terrible claim on the merits. That's not what's in front of us. The question is whether or not that claim is a due process claim or a Fourth Amendment claim. If it's a due process claim, he couldn't have discovered it until he knew that you guys knew of this confession. He didn't know that there was a confession until you told him. That's true as to only the exculpatory evidence claim, Your Honor. He's saying that he didn't discover that he was injured by the alleged nondisclosure of the exculpatory evidence until the 2020 date. When did he learn that there was a confession from somebody else? That would be the October 2020 date, taking his allegations as true. Isn't that the first point in time when he could have known that the prosecutors had information that altogether added up to his innocence but still had kept him in jail for a period of time thereafter? But that only goes to a due process claim under a Brady violation in terms of just a general substance. I'll be quiet for a minute. You agree with your colleague that they could sit on this information for six years. Let's assume it was DNA information, completely exonerated him, keep him in jail for the meantime and as long as they dismiss the charges before trial, there would be no claim because a Brady claim requires a proceeding. There would be no Brady claim, but I'm going to push... Would there be a due process claim? I'm going to push a little bit on my co-counsel's argument. I think that the malicious prosecution claim proves that there could potentially be a due process violation, but that's not the due process violation at issue here. The due process violation at issue here is the Brady violation. Yes, I understand. I think we're arguing about a hypothetical in the future. Thank you. Thank you. Thank you. Let me make this clear so you're not waiving anything. Let's assume I agree that they haven't pleaded a Brady claim. I'm worried that they've pleaded, although not correctly described it, a Tatum or Lee claim, and I'm trying to figure out... Your colleague says, no, they haven't even done that because there aren't any due process claims unless it affects a proceeding. You're pushing back a little bit, I think, and you're saying, well, maybe there can be, but the due process claim can only be a malicious prosecution claim. What I'm saying, Your Honor, to clarify, and going off of the hypothetical so that I'm obviously not waiving anything, is that the other substantive due process claims that were not the Brady violation claim, if they could bring a valid one based on the allegations, they're all time barred because when the criminal charges were dismissed against the plaintiff who knew that he was innocent and alleges the same in his complaint, that dismissal occurred in 2016, and he didn't bring the complaint until 2021, more than five years after his statute of limitations. And you can argue that if they're allowed to assert this claim, and you can get the district judge to dismiss that claim as time barred or not time barred, but it's not a malicious prosecution claim. Our cases describe it as a due process claim. Malicious prosecution claims, the Supreme Court tells us, are Fourth Amendment claims. This is a claim, and the Supreme Court described it the same way. It said you may have a substantive due process claim if the state knows you're the wrong guy but they nonetheless hang on to you. And I think the Supreme Court says we leave that as an open question, but we think there might well be a case for that. And in Lee and Tatum, we said there could be. And so I'm trying to figure out how to handle this. And the fact that it might be time barred doesn't help me because the district court hasn't found it time barred. Well, I think that under the fact that this case is not a Lee and Tatum at issue, I think that plaintiff had already found the proper vehicle for the relief he is requesting, which is the alleged four years imprisoned while he was innocent through the malicious prosecution claim based on the allegations in his complaint that we are to take as true, which is that he was prosecuted with malice and without probable cause from the minute of the murder. But it's not what he says. See, what he says is that I don't contest that there was probable cause at the outset of this case.  What I'm saying is that at some point in time, the state should have realized they had the wrong guy. And that point in time was when they overheard the telephone conversation in which my roommate confessed. And I didn't know that they knew that until they told me. So that's when my statute of limitations starts to run. I don't think that's true because when the criminal charges were dismissed, the plaintiff himself knew that he was innocent of the charges, and he could have filed a timely malicious prosecution claim, which he did not, and could have discovered in the discovery part of that litigation the exculpatory evidence before the 2020 date. But he did not know before they were dismissed that your clients had known for four and a half months that there was a confession from somebody else, correct? That is correct based on plaintiff's allegations, which we must take as true in this case, Your Honor. I notice that I only have a minute and a half left, so I'd like to reserve that for my colleague's rebuttal if I could, Your Honor. Oh, well played. Well played. All right. The two of you know each other. Good afternoon, Your Honors. May it please the Court. Kimberly Trimble of Singleton Shriver on behalf of the plaintiff appellee. Would you start out with what I think has troubled me, and I think Judge Nelson said the same thing. Has there ever been a Brady case anywhere in the country where the withheld information has not been alleged to affect a proceeding? Not that I'm aware of, but I think Your Honor has actually honed in on exactly what we were trying to allege in our complaint, and I can point you to the specific parts of the complaint in our opposition. We are alleging a due process violation here. It's a Brady-related due process violation because it relates to the withholding. Here's my problem with it, and you've heard what I've said up until now. I'm thinking of the poor district judge who gets this case, and he says, I think there's a Brady violation here, and therefore there's a claim. And it comes up to us on an interlocutory appeal, and I don't think there's a Brady claim on this. The harm may have arisen from, see, the harm in your case arises from not dismissing the claims, not dismissing the prosecution once they found out he was innocent, and these are the facts in the light most favorable to you, obviously. It doesn't come from their nondisclosure. I think it comes from both, Your Honor. Why? How were you harmed by their nondisclosure? Well, on ER 81, we discussed a chambers conference with the judge that happened during state proceedings. If the exculpatory information had been disclosed, perhaps those continuances that opposing counsel referenced of the preliminary hearing wouldn't have happened. See, I don't understand that at all. You're entitled to a preliminary hearing whenever you want one, after the initial period. And so whether there's a preliminary hearing or not is entirely within your control. You can just say, Judge, I've been charged on a complaint, and I want a preliminary hearing. Certainly, Your Honor. And he may well have said that if he knew there was exculpatory information to present there. And so my point is— Now, here's my difficulty with that. Even if there was exculpatory information, if somebody came in and said at a preliminary hearing, we have a confession from the defendant. Every judge in the world would say, we're binding him over. You can argue about—you can move later to suppress the confession. You can argue that it was involuntary. But no way this nondisclosure could have affected a preliminary hearing that was never held. I think it affected the decisions of his counsel based on the record. It may have affected decisions, but affecting counsel's decisions is not a due process violation. The due process violation, the only one that I think you've alleged, is keeping somebody in jail when they shouldn't be kept there. You may have a terrible case on that. That's a separate issue. Those are the facts. I'm just trying to figure out how that due process violation arose from the nondisclosure of the confession. Your Honor, this Court has already held that in Richards, that under Brady and its progeny, it is the suppression of exculpatory evidence and not the plaintiff's ultimate conviction that violates his livery interest. But we've always tied it to a proceeding. I think that's the problem you have here. Your Honor, I don't think that it needs to be tied to—it's tied to criminal proceedings. The due process right exists throughout criminal proceedings. Right, but we've always said that you don't have a Brady claim until a proceeding. We're more lenient than other courts. Almost every other court has said it doesn't even exist until trial. That's where I think Your Honor's questioning to my opposing counsel really shows the distinction we're trying to show here, which is that this is not a traditional Brady claim that can be raised in a criminal proceeding. Okay, but then you've got to deal with that below. You teed this up to the district court as a Brady claim. Actually, Your Honor, if I could point to the record, on our complaint at ER 88, we alleged the second cause of action I'm quoting, violation of Fifth Amendment right to due process and exculpatory evidence. But isn't that Brady? We did not call it a Brady claim. We called it a due process claim. So my point is— But here's my problem. The district judge said, I think you've got a freestanding Brady claim. Actually, Your Honor— That's why I've read the district court's thing. And that's what they're appealing, and they're probably right. You don't have a freestanding Brady claim. But I think—and, you know, don't fight me on this because this is something I'm saying that helps you. I think the facts you've alleged may make out a claim. And I'm trying to figure out how to handle that. And one way to handle it is to say to the district judge, look, you were wrong about there being a Brady claim. I know you disagree. But they might have another claim. And since this case is only at the pleading stage, if they want to amend to make a different claim, we ought to let them. And then the state can make whatever arguments it wants to make about time bar or whatever. So I'm trying to figure out—assuming I'm right that you don't have a Brady claim, what should we be doing with this case? Your Honor, I would welcome that solution. And just in slight defense of the district judge, I do want to point out that in his order, he called it a Brady-related claim. So I think if we want to amend it— Okay, so then you're saying that the Tatum and the Fifth Amendment due process is actually before us right now. Well, I think if Your Honors think the neater way to solve this case is remanding with an opportunity to amend— I got to be honest. I did not read the district court's opinion to suggest anything other than a Brady claim at all. I mean, and to say Brady-related,  I'm actually reading directly from the district court's decision. Well, I know. He said the word's Brady-related. Right. But so here's—so I'm going to use—this is a hypothetical, so you don't have to give me disclaimers that it's not your case. But the same case I posed to the other side, except the state discloses the information the day before trial or doesn't disclose it at all. And you go through a trial and you're acquitted. Do you have a Brady claim? I think you have a due process claim. Yes, but not a Brady claim. Exactly. Because you haven't been injured by the nondisclosure of the information in the decision-making process. That's why Brady says it has to be a reasonable probability that it would have affected the outcome of some proceeding. But you may have another type of claim. Right. I do think your liberty interest has been injured by the suppression of this exculpatory evidence. Right. But that's not a Brady claim. Right. It's a Brady claim. You can be guilty and have a Brady claim. Right? You can be convicted and be guilty and we'll reverse the conviction even though you're guilty. And if you're convicted the second time, that's okay. So it's your liberty interest that you're worried about. Exactly, Your Honor. I think we actually agree, in essence, on the type of claim we're trying to raise here, which is I think it gets confusing when we talk. You just want the opportunity to do it. Well, you're arguing you've already done it, I suppose. But I would be perfectly happy to amend the complaint to more clearly state that this is... And one difficulty with treating you as you've already done it is that, for very good reasons, the state didn't think you already did it. And so I'm not sure that you guys are meeting each other except in oral argument. And I'm not sure the district court does. Or the district court knows what you had to do. So I'm not sure that we really have here... You know, it's one thing for me to say I think you've stated your claim. They haven't had a real opportunity to say no if you're merely focusing on Tatum and Lee cases. Well, and that's not where the district court focuses. The district court focused on the Ninth Circuit's exceptional finding that Brady extended beyond just pre-trial. And so if we push that out of the way... Now, I mean, I will note that there's a split in authorities, even among the other circuits, about whether these due process claims that you're trying to... You're saying you want to assert whether they're viable or not. But I guess we can... That's not before us. Exactly, Your Honor. That's not before the court. So just to explore for a second, because I had the state said, well, yeah, we got this... And we don't know what the facts are because we just know what the allegations are. We got this confession in, but it was a particularly suspect confession. We get jailhouse confessions all the time. And we think our evidence against your client was really strong. But we decided in the end it was going to pose us some problems at trial, so we decided to dismiss it. And that's what the facts were found to be. You wouldn't have a due process claim, would you? Your Honor, I think... In other words, to have a due process claim, you've really got to show that at some point in time they knew they had the wrong guy. Not that there was evidence that they had the wrong guy, but that they knew they had the wrong guy. I think we have to show that there's material exculpatory evidence, which isn't necessarily... No, no, you can try people when there's material exculpatory evidence. You can continue to make charges against them. In order to make the Tatum-Lee claim... Late Tatum, it was easy. The prosecutor dismissed the moment she found out about it. So we knew what the effects of the information were. Lee, it's a little different. But what we defined it as in those cases is the state knowing that the guy who's saying I'm not the guy who did this is telling the truth and nonetheless going ahead and prosecuting him. Not enough that there would be a material question about whether... I think that was what was assumed in Tatum. I do just want to clarify for the record the facts of this case. The confession that was obtained here was obtained by a district attorney directly from the jail. This is all in our complaint and in our supporting exhibits. The district attorneys who were assigned to this case specifically said to their supervisors that they were concerned that they had the wrong person. By the way, how do you know all this? I mean, obviously, you must... You put it in the complaint, but that's a lot of detail. This all came out in the wrongful termination cases? Uh, yes, Your Honor. I was going to say this is outside the record, but I can tell you that Chris Ross, who was the prosecutor ultimately assigned to the case who got these confessions, filed his own wrongful termination case. And so it's basically a whistleblower situation that made Mr. Parker aware of the wrongs that were committed against him. And so we have a situation here where our facts actually support not only that this was reliable evidence because it was obtained by a prosecutor himself directly from a jail, but also that this prosecutor was the second assigned prosecutor to have serious concerns about Mr. Parker. But having serious concerns doesn't mean that you violated somebody's due process rights. Well, Your Honor, in this case, we have a judicial finding of factual innocence. So this is squarely on point. When do you have a judicial finding of factual innocence? After Mr. Parker learned of these exculpatory... What, is there a separate case? Yes, Your Honor. And that's cited at ER 50. That's where the arrest was expunged or something like that? Yes, Your Honor. It's a petition in California court to... But that still doesn't tell us when the prosecutors knew. Your position is that they should have known when they got the jailhouse confession. I think you can put these things together because the petition actually is talking about these jailhouse confessions. The jailhouse confession led to the dismissal of the charges, and at the proceeding for the judicial finding of factual innocence, a representative from the district attorney's office was there and made no objections. So altogether, the district attorney's office clearly knew... But you're really complaining about... I mean... Again, we're talking... We spent 40 minutes of 42 minutes in argument. You're talking about a hypothetical claim that hasn't been made. But just to put a finer point on it, you're complaining about the six months, not the full four years, right? At this point, I think the six months is what's been established by the pleadings. We have to remember we're at a motion for judgment on the pleadings at this point. We actually don't know what evidence was in the prosecutor's possession throughout the part of this case. The claim you were making, at least in this complaint, even though it was a Brady claim, was that there was a point in time when you should have told us about this confession. Yes, but... And that's when you learned about it. And if you... And now the claim I think you're really making is that all of my detention thereafter was inappropriate. Yes, but I do also want to reserve for the court... You might discover that they had a picture of somebody else doing it and never gave it to you. That's not in this case yet. We have discovered that a little bit. One of the internal district attorney memorandums that we attached to our complaint indicates that physical evidence was tested because of a concern of Mr. Parker's innocence and that it exonerated him and he was discarded as a person. Part of the problem you have is that even if... I mean, this is where the due process and the Brady claims are different because I mean, just because there might have been a Brady claim, assuming we're all sort of maybe coming to the conclusion that it doesn't, but that doesn't mean that they had to do... I mean, all the time there's exculpatory evidence. It doesn't mean you have to drop the case. It doesn't mean you have to drop the case, but you do need to consider the person's liberty interest. I think the case that really goes into this well is the Gutierrez v. Solano case. Yeah, but I'm not convinced by... Even though I love Judge Parkerson, I'm not convinced by the district court opinion in that case because it's not tethered to a proceeding. Well, if you can think about your hypothetical, Your Honor, where you were talking about the DNA evidence that was held until the day before trial, in the criminal proceeding, in a criminal appellate proceeding, if that had been turned over, the solution would have been to grant a continuance of the trial date, right? So that the defendant could then use that evidence to build a better trial defense. And that would be considered a cure of the Brady violation. And what I'm suggesting is that there would still have been a due process violation because of that extended time in pretrial detention that was the result of withholding exculpatory evidence. Well, only if that extended time in pretrial detention would not have been spent otherwise. So, for example, I might have clearly, as a prosecutor, clearly material that falls within the Brady ambit. It's potentially exculpatory. It's material. But I still want to proceed with my case against somebody. So even if I disclosed it seven times, the client's liberty still would have been implicated exactly the same way because he would have remained in jail until trial. So what you've got to show is that he wouldn't have been in jail. That his liberty wouldn't have been impacted during that period. That's the detail I was trying to focus on, Your Honor, is if his criminal defense attorney needed additional time to prepare once he got that exculpatory information, that additional detention that was because of the failure to disclose it in a timely manner is where I think there could be prejudice from the due process violation. So I understand a prosecutor could go forward even with exculpatory evidence, but if withholding that exculpatory evidence prolonged pretrial detention, that could be the basis for prejudice. But there isn't any case that says that. No, Your Honor, but I think that's the natural extension of Tatum and Richards and I do just want to highlight, I know my time is up. Oh, it's not. That was yellow. The Richards case, which is the more recent 2022 case, that one's based on the fabrication of evidence, but I think it's important to consider that here because that also is a due process violation that does not depend on the conviction to show that the defendant suffered. Right, but the difference in that case, again, is that the notion there is that but for the fabrication of this evidence, this person's liberty interests would never have been impacted at all. Well, it's not but for, Your Honor. The Richards court specifically rejected a but for test there. If Your Honor recalls, there was, it was blue fibers that were found underneath the nails and then there was not a conviction and then additional evidence, which I believe was the bite mark evidence, was introduced at trial and so this court actually grappled with this idea that it was an easier causation question for the bite mark evidence because that's what led to the conviction. But just because the fabricated evidence didn't directly create the conviction, it didn't mean that it wasn't material for the purposes of a due process violation. So, I don't think that you need to find that there's a but for causation. There must be some causation. Correct, and that's what the materiality standard is. So you can grab the materiality standard from Brady and use that in evaluating a due process violation for the withholding of exculpatory evidence. Yeah, I don't think, I don't think you're saying anything different than what you said before, which is that from the point at which they withheld this, it was material in the sense that he wouldn't have been kept, he wouldn't have been detained during that interim period. He shouldn't have been. I mean, in this case he was. For example, if he'd been out on bail for this entire period and they just never disclosed this information until just before trial, but there was plenty of time to prepare for trial and use it, I'm not sure you've made out any sort of due process claim. I'm not willing to concede that because of Bernstein v. Pew's recognition that there is a liberty interest, an infringement on a liberty interest when someone is under bond conditions, that is an imposition on their right to be free. Well, maybe a better way to put it is you'd be asking us to make new law to say that and you don't need to ask us to make that new law in this case. That is true, Your Honor. I think what a lot of this gets to is actually the degree of damages that a plaintiff would be entitled to here. There would be a difference in what a jury would probably award someone who is sitting in custody for... But I want to get back to the last point that concerns me in this case. The malicious prosecution Fourth Amendment claim is not in front of us, right? Correct. Let's assume for a moment that it fails for whatever reason. Why is this not, as your friend says, really a malicious prosecution claim in different clothing? Well, Your Honor, that is why I suggested in the answering brief that if this court views it more as a malicious prosecution claim, the district court could be given an opportunity to re-evaluate whether... Well, district court always has an opportunity. There's no final judgment. Whatever happens in this case, we're sending you back to the district court. You could always ask the district court to re-evaluate whatever it wants to re-evaluate. So I think what's problematic about the way that opposing counsel talks about this as a malicious prosecution claim is as if it accrued when the criminal charges were dismissed, which is true for the argument that he was being prosecuted as an innocent man. But if the basis of the malicious prosecution claim was a withholding of exculpatory evidence, he didn't have inquiry notice of that claim until October 2020. So that's where I think the district judge's analysis would have to be redone if we were going to look at this exculpatory evidence claim as a malicious prosecution claim. This may be us all speculating about stuff we don't have to speculate about. There's a difference between saying, look, you prosecuted an innocent man and I knew that when you finally dismissed the charges and saying that you had information somewhere along the way that should have told you you were prosecuting an innocent man. And that's the difference, I think, between a malicious prosecution claim and a due process claim. So you probably are put on notice that you've got to start thinking about filing a malicious prosecution claim whenever the charges are dismissed. Right. If your malicious prosecution claim was based on the lack of probable cause, that is probably the moment that the case was dismissed. But in an exculpatory evidence case like ours, the inquiry notice would be when you learned of the exculpatory evidence, which, just to be clear... In this case, happens about the same time, right? No. He learned of the exculpatory evidence in October 2020. And the charges were dismissed when? They were dismissed in 2014. Thank you. All right. Thank you. We'll hear whatever time we have on rebuttal. I guess do some math. Yeah, there you go. Two minutes is perfect. Thank you, Your Honor. The Supreme Court has been very clear that when it comes to allegations involving failure to disclose exculpatory evidence, the exclusive way that we analyze that is under the Brady regime. It has also been very clear that that Brady regime is very narrow, because its purpose is to vindicate the right to a fair trial. Now, this circuit has extended that to pretrial proceedings. No other circuit has done that, and the Supreme Court has not done that. So the argument suggesting that we could look to some other theory outside of Brady is contrary to what the Supreme Court has held. I mean, I know we've focused like 90% of our discussion on it, but that's a debate for another day, right? And another court. We shall see, Your Honor. But I would agree that in terms of what Judge Hurwitz was saying about affecting the outcome here, there is no evidence on the pleadings even taken as true that any outcome would be any different. Both of Your Honors correctly recognize that district attorneys have exculpatory evidence all the time that doesn't mandate dismissal on their part. And there's no evidence that the additional six months that Mr. Parker suffered had anything other to do  prelims. Well, there's no evidence in this case at all. It's judgment on the pleadings. Yes, Your Honor. And so the question is whether they've pleaded facts that might give rise to a claim, not whether they have any evidence to support it. That's true, Your Honor. They may lose terribly on whether they have evidence to support it. And on the pled facts, Your Honor, the reason for the six months of dismissal is that they knew with the outcome of any proceeding. And that is an essential element. Okay, but just to be clear, let's assume, again, that they knew with absolute certainty that they had the wrong guy at day one, someday along the way, day X. And they held on to the guy for six more months before they dismissed the proceedings. So that we're absolutely clear, it's your position, the no claim under the Constitution? I'm not aware of any due process or Brady claim it gives rise to. I haven't given it any thought as to whether or not there might be a theoretical claim that rests on facts that are different than ours, Your Honor, no. But I thank you for hearing us out, and I thank you for your time. Thank you both, all of counsel, for your arguments today. The case is submitted and the Court is adjourned for the day. Thank you. Thank you, sirs. All rise. This Court for this session stands adjourned.
judges: KLEINFELD, HURWITZ, NELSON